**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re: )  BAP No. NC-13-1618-JuKuPa
)
RICARDO R. PEDROCHE and )  Bk. No. NC-10-44376-MEH
NELIA V. PEDROCHE, )
)
Debtors. )
_____ )
)
LAUNCE YEN, )
)
Appellant, )
v. )  M E M O R A N D U M[*]
)
RICARDO R. PEDROCHE; )
NELIA V. PEDROCHE, )
)
Appellees. )
_____ )

Argued and Submitted on October 23, 2014
at San Francisco, California

Filed - November 10, 2014

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable M. Elaine Hammond, Bankruptcy Judge, Presiding
_____

Appearances:     Marc E. Voisenat, Esq. argued for appellant
                 Launce Yen; Jeff David Hoffman, Esq. argued for
                 appellees Ricardo R. Pedroche and Nelia V.
                 Pedroche.
                 _____

Before:  JURY, KURTZ, and PAPPAS, Bankruptcy Judges.

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Judgment creditor Launce Yen appeals from the bankruptcy court's order finding him in contempt for violating the § 524[1] discharge injunction and awarding compensatory and punitive sanctions in favor of debtors, Ricardo and Nelia Pedroche. We VACATE and REMAND.

## I. FACTS

Prior to debtors' bankruptcy filing, Yen commenced a lawsuit against Ricardo in the California state court. On the form complaint, Yen checked the box showing that his claim was based on breach of contract and that he sought $11,760.00 in damages. The state court entered a default judgment against Ricardo and in favor of Yen.

The next day, on April 17, 2010, debtors filed a chapter 7 bankruptcy petition. Debtors listed Yen's lawsuit in their statement of financial affairs, but he was not listed as a creditor in their schedules or mailing matrix. The bankruptcy court set July 12, 2010, as the last date for filing dischargeability complaints under § 523(c).

On April 19, 2010, the state court issued an abstract of judgment, which Yen recorded the next day, thereby creating a judgment lien against debtors' home. Debtors were not aware of the lien. In July 2010, debtors obtained their discharge in their no asset case and the case was closed.

In early 2012, debtors attempted to refinance their home,

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

-2-

but were unable to do so because of Yen's lien.  Debtors moved to reopen their case for the purposes of amending their schedules to add Yen as a creditor and to bring a § 522(f) lien avoidance action, which the bankruptcy court granted.[2]

Debtors then filed a motion to avoid Yen's judicial lien under § 522(f).  Yen opposed, arguing that he had no knowledge of the bankruptcy filing when he recorded the abstract of judgment and would be prejudiced if the motion were granted because he had a nondischargeable claim.  In an accompanying declaration, Yen alleged that Ricardo falsely represented that he would repay the loan when he had no intention of actually repaying it.

In response, debtors pointed out that Yen had provided no evidence that the debt was nondischargeable nor had he filed an adversary proceeding.  They further asserted that Yen's debt was discharged under the holding in Beezley v. Cal. Land Title Co., 994 F.2d 1433 (9th Cir. 1993), because their case was a no-asset case and they did not intentionally omit him from their schedules.  For the first time, debtors maintained that Yen's recording of the abstract of judgment postpetition violated the

_____

[2] The bankruptcy court initially granted debtors' motion by order entered June 25, 2012, for the limited purpose of adding an omitted creditor.  The court concluded however that debtors would not be able to avoid Yen's lien based on the holdings in Dewsnup v. Timm, 502 U.S. 410, 419 (1992) and Concannon v. Imperial Capital Bank (In re Concannon), 338 B.R. 90, 95 (9th Cir. BAP 2006), both of which prohibited lien stripping under § 506. Debtors moved for reconsideration, noting that they were seeking to avoid Yen's judicial lien under § 522(f) and thus the holding in In re Concannon was not applicable.  Agreeing with debtors, the bankruptcy court granted debtors' motion to reopen as originally requested.

-3-

automatic stay.

In debtors' declaration filed in support, they explained that (1) the basis for Yen's claim was not a loan, but from football gambling debts; (2) Ricardo had paid approximately $600 a month to Yen for a few months but was not able to continue the payments; and (3) Yen demanded a promissory note on the gambling debt, which Ricardo was forced to sign in fear of trouble at his workplace since Yen and Ricardo worked for the same employer. Debtors declared that they inadvertently left Yen off their schedules and that Yen had been aware of their bankruptcy case since, at the latest, March 19, 2012, but refused to voluntarily withdraw the abstract of judgment.

In a supplemental opposition, citing out-of-jurisdiction case law, Yen argued that a technical violation of the stay did not warrant voiding his lien. Yen also asserted that debtors should be equitably estopped from asserting a violation under § 362 when they knew of the lawsuit but failed to list him in their schedules. Alternatively, Yen requested the bankruptcy court to grant him retroactive relief from stay.

In a supplemental reply, debtors argued that Yen was aware of the bankruptcy case for no less than six months, yet he had not filed a motion for relief from the automatic stay.

On October 10, 2012, the bankruptcy court entered an order denying debtors' motion to avoid Yen's judicial lien under § 522(f) and instead voiding Yen's judicial lien under § 362.[3] Seven days later, debtors recorded the bankruptcy court's order.

---

[3] This order was not appealed and became final.

-4-

The following day, without debtors' knowledge, Yen re-recorded his judgment lien. Thereafter, debtors' case was closed a second time.

About ten months later, debtors filed a second motion to reopen their case, this time for the purpose of enforcing the discharge injunction. Debtors maintained that the bankruptcy court had previously found that the debt owed to Yen was discharged. Yen disputed this contention, arguing that there had been no determination whether or not his debt was discharged, but he did not oppose the reopening of the case for the purpose of determining whether the debt was discharged. In reply, debtors asserted that it was improper for Yen to raise the dischargeability of the debt in the context of the motion to reopen. Debtors also noted that Yen had repeatedly stated that the debt was nondischargeable, but provided neither facts nor legal authority to support his assertion. The bankruptcy court granted debtors' motion to reopen by order entered on September 27, 2013.

Debtors subsequently filed a motion for contempt, asserting that Yen violated the § 524 discharge injunction by re-recording his lien for a discharged debt against their property. Debtors argued that Yen's debt was discharged "by order of this court" because Yen did not claim, nor could he, that the debt fell within any exceptions to discharge under § 523(a)(2), (4) or (6). Debtors requested actual and punitive damages. Filed with the motion was the declaration of debtors' attorney who attached copies of Yen's state court complaint and judgment. Also included were invoices showing the attorney's fees debtors had

incurred to date.

Relying on Costa v. Welch (In re Costa), 172 B.R. 954 (Bankr. E.D. Cal. 1994), Yen argued in opposition that debtors had the burden of demonstrating that the § 727 discharge applied to his debt.[4] Yen further maintained that because he did not have actual knowledge that the petition had been filed in time to file a timely dischargeability complaint, the failure to initially schedule the claim may mean that it is nondischargeable under § 523(a)(3)(B). Finally, citing Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 507 (9th Cir. 2002), Yen asserted that debtors were not entitled to punitive damages because only compensatory damages were available in civil contempt.

In reply, debtors argued there was "no dispute" regarding whether the debt was discharged. Debtors maintained that Yen would have no chance of prevailing in an adversary proceeding,

_____

[4] In Costa, the debtors had filed an adversary proceeding seeking damages against a bank, the judgment creditor and the judgment creditor's attorney on the theory that the bank had violated the discharge injunction by honoring the judgment creditor's writ of execution. Debtors had not listed the creditor in their schedules and there was an issue regarding the dischargeability of the debt. The bankruptcy court noted that the debtor could have raised the affirmative defense of discharge in the state court or have the state court or bankruptcy court determine the dischargeability of the debt, but instead resorted to an action for contempt. The bankruptcy court stated: "[W]here, as here, a genuine question about the applicability of a discharge to a particular omitted debt remains after reasonable investigation, a declaratory judgment action under section 523(a)(3) is better suited to resolve the dispute than the bludgeon of contempt." 172 B.R. at 964. In dismissing the adversary proceeding for contempt, the court found that debtors had not demonstrated that they were entitled to relief.

rendering it a useless waste of resources by the parties and the bankruptcy court. Filed with the reply was another declaration of debtors' attorney with additional invoices which showed debtors' had incurred $8,400 in fees for the reopening of their case and filing the motion for contempt.

Yen filed a request for judicial notice of his declaration filed July 30, 2012, which stated that Ricardo had falsely represented that he would pay back the loan.

The bankruptcy court heard the matter on November 13, 2013. The bankruptcy court expressed its opinion that Yen had the obligation of proving his debt was nondischargeable. The court noted that Yen, instead of choosing to bring an adversary proceeding seeking to determine that his debt was exempted from discharge, filed a lien only a few days after the court ruled that his lien was void.

Yen's counsel argued that the burden on the issue of nondischargeability should not shift to him when debtors had the initial burden of providing notice to him so that he could file a timely nondischargeability complaint.

The bankruptcy court found that when the case was reopened and the lien set aside, Yen was on clear notice that there was a bankruptcy, there was a discharge injunction, and then he took affirmative action in violation of it. The court emphasized that when a creditor doesn't know about the discharge then maybe he isn't running afoul of it, but "that's not the case here."

The court entered its findings on the record:

> Here I find the creditor was on notice of the discharge injunction and the actions taken were intentional. Although the creditor asserts a

-7-

discharge injunction may not apply if the debt were determined to be nondischargeable, the only evidence indicating a basis upon which to assert the debt may be nondischargeable is a declaration from the creditor with the conclusory statement that the debtor did not intend to repay. In contradiction, the evidence provided by the debtor, the state court complaint, and the clerk's default judgment show that this was originally brought as a breach-of-contract claim. Their . . . and there's nothing in those documents asserting a basis for additional claims.

Further, to the extent the creditor had any question as to whether the discharge injunction applied, they - the creditor should have sought a determination before refiling the lien. The - the way the bankruptcy code works is that when the debtor files . . . bankruptcy, everything is discharged unless it is explicitly exempt from discharge either by statute or by a determination under an adversary proceeding. Here, if there was a question after the creditor was on notice of the discharge, essentially Beasley [sic] gives them the opportunity to come back and open the time to determine if it's nondischargeable, but it doesn't shift the burden to the debtor to establish that a debt is dischargeable.

In the end, the bankruptcy court awarded debtors $8,400 in compensatory damages. Regarding the punitive damages, the court found that they were appropriate because Yen's actions were either reckless or showed a callous disregard for the law under the holding of Henry v. Assocs. Home Equity Servs., Inc. (In re Henry), 266 B.R. 457, 481 (Bankr. C.D. Cal. 2001). The bankruptcy court awarded $8,000 in punitive damages, rather than the $50,000 requested, because that amount was approximately the same as the compensatory damages.

The bankruptcy court entered the order granting debtors' motion for contempt, to void lien and for actual and punitive damages on December 12, 2013. Yen filed a timely notice of appeal.

-8-

## II.  JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A).  We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES

A.  Whether the bankruptcy court erred in finding that Yen violated the discharge injunction; and

B.  Whether the bankruptcy court erred in awarding compensatory and punitive damages.

## IV.  STANDARDS OF REVIEW

"We review the decision to impose contempt for an abuse of discretion, and underlying factual findings for clear error." Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003) (citing FTC v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999)).

We review the bankruptcy court's decision to impose sanctions for an abuse of discretion.  Nash v. Clark Cnty. Dist. Atty's. Office (In re Nash), 464 B.R. 874, 878 (9th Cir. BAP 2012).  In determining whether the bankruptcy court abused its discretion we first determine de novo whether the trial court identified the correct legal rule to apply to the relief requested and then, if the correct legal standard was applied, we determine whether the court's application of that standard was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." United States v. Loew, 593 F.3d 1136, 1139 (9th Cir. 2010).

## V.  DISCUSSION

Once debtors received their discharge, § 524(a)(2) operated

-9-

as an injunction to enjoin creditors from collecting a prepetition debt. A party who knowingly violates the discharge injunction under § 524(a)(2) can be held in contempt under § 105(a). Zilog, Inc. v. Corning (In re Zilog), 450 F.3d 996, 1007 (9th Cir. 2006). To prove a sanctionable violation, the debtor has the burden of showing that the creditor "'(1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction.'" In re Nash, 464 B.R. at 880 (quoting Espinosa v. United Student Aid Funds, Inc., 553 F.3d 1193, 1205 n.7 (9th Cir. 2008)). Clear and convincing evidence must be presented to show that a creditor has violated the discharge injunction, and that sanctions are justified. In re Zilog, 450 F.3d at 1007; In re Nash, 464 B.R. at 880.

With respect to the knowledge requirement, whether Yen should be held in contempt for violating the discharge injunction requires a factual inquiry into his knowledge. In re Zilog, 450 F.3d at 1007-09.

> It is certainly true that a trier of fact could infer knowledge of an automatic stay or discharge injunction from the fact that a creditor knew of the bankruptcy. Such an inference, however, would be a matter of fact, not a presumption implied in law. Knowledge of the injunction, which is a prerequisite to its willful violation, cannot be imputed; it must be found. If, as here, the creditors dispute that they had such knowledge, a finding that they knew of the injunction, and thus willfully violated it, can only be made after an evidentiary hearing. Id. at 1008.

Here, we conclude that the record does not support a contempt order under Zilog's high burden of proof.

Yen filed a declaration in connection with the lien avoidance proceeding alleging that Ricardo had falsely represented that he would repay the loan thereby raising the

-10-

question whether the debt was nondischargeable. Yen requested the bankruptcy court to take judicial notice of the declaration in the contempt proceeding. The nondischargeability of the debt, which was hotly contested throughout the lien avoidance and contempt proceedings, raised a factual dispute as to whether the discharge injunction applied to Yen's debt.[5]

At the hearing on contempt, the bankruptcy court found Yen had notice of the discharge injunction and that his actions were intentional. However, to be held in contempt, Yen must not only have been aware of the discharge injunction, but must also have been aware that the injunction applied to his claim. See In re Zilog, 450 F.3d at 1010 n.14. The bankruptcy court made no factual finding that Yen knew that the discharge injunction applied to his claim. As a result, there remains the question of whether Yen was, in fact, unaware of the discharge injunction's potential applicability to his claim. Moreover, since Yen disputed that the discharge injunction applied to his debt, the bankruptcy court was required under Zilog to hold an evidentiary hearing on that issue. This it did not do, instead making its findings solely on a paper record.

Due to these shortcomings, we conclude that the bankruptcy court abused its discretion by finding Yen in contempt. It follows that the compensatory and punitive damage awards cannot stand.

---

[5] Although Yen failed to file a nondischargeability complaint, there was no time limit for him to do so under § 523(a)(3)(B). Furthermore, the bankruptcy court never set a deadline for him to do so. Accordingly, whether the debt was discharged is still at issue.

## VI. CONCLUSION

For the reasons stated, we VACATE AND REMAND.